IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

AUGUST FUNDING GROUP, LLC,

    Plaintiff,	Case No. 1:23cv20063

vs.

JONATHAN C. CASALI;
BINYAMIN YITZCHAKOV;
JCT GROUP;
FUND NOW, LLC;

    Defendants.
_____/

# COMPLAINT

Plaintiff AFG sues the Defendants as follows:

1. Plaintiff's members are domiciled in and citizens in New York per 28 U.S.C. § 1332.

2. Defendants Casali and Yitzcharov are domiciled in and citizens of Florida or Texas, the sole members of JCT and/or Fund Now, per 28 U.S.C. § 1332.

3. Per 28 U.S.C. § 1332, jurisdiction exists in this case based on diversity of citizenship between the parties. The amount in controversy exceeds $76,000.00, such as relief in law or equity. The case concerns debt, property and relief valued over $76,000.00, including damages and fees recoverable by contract/statute. Per § 1367, jurisdiction exists over all claims.

4. Jurisdiction exists by law as to all Defendants as substantial relief is sought as to them, to which they consented and agreed or are subject. A substantial part of the events or omissions at issue occurred here or Defendants consented to this jurisdiction or are subject to it. The Loan at issue was applied for, considered in, funded from and due to be performed here. It is governed by New York Law, applicable to all claims at issue, which may be enforced here, as Defendants agreed, who subjected themselves to jurisdiction here with their property and assets. Defendants are related to each other and bound by the Loan, resulting in the Judgment, per their ratification of both, common

ownership of each business at issue, property secured by the debtor or misconduct in which they participated. It was foreseeable that all Defendants are bound by the debt at issue.

### The Parties

5. This matter involves Fund Now Financial Corp, formed with the Florida Secretary of State in April 2021 [FMD/Business] whose officer and director was Jonathan Casali, a resident of Bronx New York, who resides in and conducts business here.

6. FMD was dissolved in September 2022 for failure to file an updated report with the Secretary of State.  It was located at 2901 NE 1st Avenue Unit 906, Miami FL 33137.

7. Casali owned another business, BJ United, operated from 323 Sunny Isles Blvd Ste 501, Sunny Isles Beach FL 33160. Casali operated this now-defunct business with Yitzcharov, a resident of Florida, formed December 2021: both of which dissolved in September 2021.

8. Casali also operates JCT Group in New York since June 2020, a small business lender, also operated from Miami Florida through Taylor Samuel and John Rocco Maldonado.

9. At all times relevant, the Defendants acted on behalf of and within the scope of their agency for Casali for the misconduct at issue, for which all Defendants are liable which they ratified.

10. Defendants conduct their loan <u>business</u> as an enterprise, sharing its name, offices, staff, property, assets, ownership, management and finances. They have authority to act for each other on the transactions, acts and omissions at issue

11. FMD applied for a commercial Loan [Loan] at Plaintiff's office, whose agents including Cassali, upon information, represented in the application that they could bind FMD, had the ability and intent to comply with the Loan, whose application information was truthful, upon which Plaintiff materially relied in providing the Loan, which Defendants ratified.

### The Commercial Loan

12. This matter involves a modified commercial Loan, held by AFG, dated May 2021, for $43,500.00, ultimately refinanced into $72,700.00, due by October 2021 owed by Fund Now.

13. In or about May 2021, Plaintiff and the TMD Parties, TMD and Schwartz, made an agreement (the "Agreement") under which Plaintiff would partially fund a loan by TMD to Solution Engineering for Reliable & Viable Enterprises Advisory Group ("SERVE").

14. Plaintiff is subrogated into the SERVE loan under law and equity as shown here.

15. Serve was located at 5518 Oak Place, Bethesda, MD 20171 at the time of this debt.

16. AFG'S funding under the Agreement was $43,500.00 ("Initial AFG Funding") AFG's syndication for the deal was confirmed September 23, 2021 by its manager, Marc Chagall.

17. Plaintiff paid the TMD Parties $43,500.00 under the Agreement, the Initial Funding.

18. The TMD Parties used this Initial Funding to make a loan to SERVE (the "Loan"). Serve's loan was ultimately closed on or about October 21, 2021 for net funds of $77,000.00.

19. SERVE had to pay the Loan by September 27, 2021 ("Original Maturity Date").

20. The TMD Parties and Fund Now had to repay AFG $65,207.00, and repayment was to become due upon SERVE's repayment of the Loan, and in no event later than the Original Maturity Date in exchange for AFG providing Defendants with the Initial AFG Funding,

21. SERVE asked to refinance the Loan on or before the Original Maturity Date.

22. Plaintiff and the TMD Parties agreed to modify their Agreement on or subsequent to SERVE's request to refinance the Loan and AFG would provide the TMD Parties with an additional $10,000.00 (the "Second AFG Funding") to refinance the Loan.

23. The TMD Parties had to repay $72,700.00 to AFG, upon repayment of the Loan by SERVE, by October 26, 2021 (the "Modified Maturity Date") under the Agreement, in exchange for AFG providing the Initial and Second AFG Funding.

24. SERVE repaid the TMD Defendants all moneys due under the Loan, as refinanced and restated Loan on or before the Modified Maturity Date.

25. The sum of $72,700.00 became immediately due and owing to Plaintiff from the TMD Defendants upon SERVE's repayment of the Loan. AFG demanded Fund Now and Casali re-pay the $72,700.00 after repayment of the Serve Loan.

**The Prior Action by Plaintiff to Enforce the Loan.**

26. In November 2021, AFG brought a Prior New York Action against FMD to enforce the Loan, naming the TMD Parties as alleged 'alter-egos,' as FMD's undocumented parts, Kings County Supreme Court Index No. 529357/2021.

27. The Prior Action included enforcement of the loan balance and punitive damages up to $500,000.00 for which there was a colorable basis as here. All three TMD Parties served with process.

28. On October 11, 2022, AFG obtained a default judgment in King County Supreme Court, New York against FMD for $74,934.91, which did not include equitable relief and did not name any other party, after TMD and Schwartz were dismissed with prejudice.

29. Certain property and assets of FMD are encumbered as loan collateral under a Security Agreement in the Note, including their property in this state.

30. The Judgment is FMD's unconditional legal obligation, with all others who become liable for its amounts due, who are named in this action.

31. Casali, JCT and its staff, including the other Defendants are liable on an alter-ego or successor liability claim, due to their connection with FMD, who appear to be operating the same business as FMD, under JCT, which is fraudulent as in other cases.

32. The misconduct of FMD in the Prior Action was non-privileged and had no relevance to the matters at issue in the Prior Action, particularly the ensuing misconduct of all Defendants after the Judgment, which amounted to baseless, illegal conduct as shown above.

33. Upon information, Defendants operate as an enterprise as detailed above or as a partnership, co-mingle, control and share their profits and losses in which they make contributions, or conduct their business, deriving from FMD, as their alter-ego, whose corporate formalities are disregarded, which is undercapitalized and cannot satisfy its obligations, requiring its corporate veil be pierced to avert this fraud in the interests of Plaintiff's paramount equity as shown here.

34. All conditions precedent to occurred, were fulfilled, waived or their occurrence or fulfillment were unnecessary or futile.

### COUNT I: ENFORCEMENT OF JUDGMENT AS TO DEFENDNATS

35. ¶ 1-34 are incorporated.

36. Article IV § 1 of the Constitution states: "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State" meaning "a judgment properly authenticated and issued by a court having jurisdiction is entitled to the same degree of recognition in a sister state as would be afforded by the state of original rendition."

37. The New York court had jurisdiction over FMD and the issues in that case, resulting in the New York Judgment as to FMD, is entitled to full faith and credit per 28 U.S.C. §1738.

38. Plaintiff may enforce the Judgment here as Federal and Florida law permit enforcement of foreign judgments in a court, with the same effect as a domestic judgment, with a suit to enforce the judgment, given this amount, against parties who obtained their money and property.

39. The Court has broad discretionary powers to subject property rights of a defendant in execution, however fraudulently covered up, or concealed, whether in the name or possession of third parties or not, to satisfy a judgment.

40. Plaintiff requests enforcement and recognition of its Judgment as to all Defendants by the Court, entering judgment on its balances as to these Defendants, granting all just relief.

## COUNT II: BREACH OF FIDUCIARY DUTY
## AS TO ALL DEFENDANTS

41. ¶¶ 1-34 are incorporated.

42. FMD is presumed insolvent, per its default on the Loan and other debts as they came due, its debts exceed its assets and was insolvent at the time of the misconduct at issue, at least since the filing of Prior Case and entry of that Judgment.

43. Defendants perpetuated FMD to loot it, rendering it insolvent, incurring debt it could not satisfy such as the Judgment, misusing its property and assets for their benefit.

44. Casali had a fiduciary duty as FMD's owner, manager and officer to conserve and manage its property and assets in trust to benefit its creditors, such as its revenue from the District to pay Plaintiff, at least after its insolvency, which they were not dissipate, precluding satisfaction of the Judgment and the Orders to benefit themselves.

45. Casali breached his fiduciary duties by misusing, transferring, disposing of, dissipating and looting FMD's property and assets, after its insolvency to wrongfully and preferentially pay and benefit himself and the other Defendants, while refusing to satisfy the Judgment.

46. The misconduct of Casali proximately and actually damaged Plaintiff, wrongfully precluding satisfaction of the Judgment by FMD, per his misuse and disposal of its property and assets.

47. The other Defendants aided, abetted and procured Casali's misconduct, in which they participated, who benefitted by unjustified payments from FMD during its insolvency, dissipating its property and assets during the New York Case, knowing of Casali's duties to Plaintiff.

48. Defendants engaged in and conspired to engage in their campaign of misconduct to unjustly enrich themselves with FMD's property and assets, by their deliberate, continuing acts and omissions, to frustrate enforcement of the Judgment, to which Plaintiff was entitled but was deprived.

49. Defendants acted with actual or implied malice, with willful, wanton misconduct that was reckless, in callous disregard of Plaintiff's rights, who were unjustly enriched as a result.

50.     Plaintiff demands judgment against the Defendants for compensatory, consequential, special, nominal and punitive damages, of at least $500,000.00 for their torts and all just relief such as its other remedies, including disgorgement of all monies of FMD paid to them since its creation, holding them liable on the Loan and granting its other relief including its equitable remedies.

### COUNT III:  CONSPIRACY AND RELATED RELIEF AS TO ALL DEFENDANTS

51.     ¶¶ 1-34 are incorporated.

52.     Defendants had a conspiracy, a common design to commit their torts at issue, each sharing an intent and knowledge to accomplish this goal by concerted action by unlawful purposes and/or lawful purposes by unlawful means: namely their torts at issue.

53.     Defendants committed overt acts to further their tortious conspiracy, including but not limited to, their misconduct directed against Plaintiff in the Prior Action and at Plaintiff's office.

54.     Defendants made agreements to perform separate aspects of their illegal conspiracy in concert, and divide compensation generated from their scheme among themselves.

55.     Defendants consented to, benefited from and ratified all misconduct at issue.

56.     Plaintiff was proximately and actually damaged by this conspiracy of Defendants whose bad-faith misconduct was willful, knowing and illegal, which they ratified.

57.     Plaintiff demands judgment as to Defendants for their conspiracy of misconduct, for compensatory, consequential, special and nominal damages and all other just relief.

58.     Defendants are not minor(s) or adjudged incompetent; were not in the military for the last 30 days and not subject to protection per 50 U.S.C. § 3901.

Respectfully submitted this 6th day of January 2022.

By: /s/Paul G. Wersant
Paul G. Wersant
Florida Bar No. 48815
3245 Peachtree Parkway, Suite D-245
Suwanee, Georgia 30024
Telephone: (678) 894-5876
Email: pwersant@gmail.com
Attorney for Plaintiff